UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:17-CR-66-GFVT-HAI |
| | ) | |
| v. | ) | RECOMMENDED DISPOSITION |
| | ) | |
| STEPHEN TATE, | ) | |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

The Court, on referral (D.E. 3 at 2), considers reported violations of supervised release conditions by Defendant Stephen Tate. District Judge Mattice in the Eastern District of Tennessee entered a judgment against Defendant on February 13, 2008, for conspiracy to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(A), and 21 U.S.C. §846. D.E. 1-3 at 1. He was sentenced to one hundred and twenty months of imprisonment and five years of supervised release. *Id*. at 2-3. Defendant began his term of supervised release on January 29, 2016.

On March 14, 2017, the United States Probation Office for the Eastern District of Tennessee submitted a Report on Offender Under Supervision, which charged that Defendant took more hydrocodone pills than he was prescribed and recommended that no action be taken. The District Court for the Eastern District of Tennessee adopted the recommendation. Defendant began outpatient substance abuse treatment on March 3, 2017. On November 20, 2017, the United States Probation Office for the Eastern District of Tennessee granted Defendant's request for permission to enter a detox program followed by an inpatient substance abuse program after he again took more oxycodone pills than he was prescribed. Defendant successfully completed a

detox program on November 30, 2017, and an inpatient substance abuse treatment program on December 28, 2017. Jurisdiction was transferred to the Eastern District of Kentucky on December 6, 2017. D.E. 1.

**I.**

On May 24, 2018, the United States Probation Office for the Eastern District of Kentucky ("USPO") issued the Supervised Release Violation Report ("the Report") that initiated this revocation. The Report alleges that Defendant took more than the prescribed dose of his hydrocodone and lorazepam prescriptions. Specifically, the USPO conducted a check of Defendant's prescription medication on May 14, 2018. Defendant filled a prescription for forty-five hydrocodone/acetaminophen tablets on May 4, 2018, and told the USPO that he took his last tablet on May 11, 2018. Defendant could not produce the bottle, but a KASPER check indicated that it was a fifteen-day supply. If Defendant had taken the hydrocodone prescription as directed, he should have had twelve pills remaining on May 14, 2018. Defendant also filled a prescription for twenty lorazepam 1 mg tablets, a benzodiazepine, on May 10, 2018. The prescription included instructions to take a maximum of two tablets per day. Defendant had seven tablets remaining. If Defendant had taken the lorazepam prescription as directed, he should have had ten pills remaining on May 14, 2018. Further, Defendant submitted a urine specimen on May 14, 2018, that tested positive for marijuana via an instant testing device and laboratory confirmation testing. Defendant told the USPO that he took anandahemp, a hemp extract, that contains tetrahydrocannabinol (THC).[1]

---

[1] THC is the psychoactive substance in marijuana. The anandahemp product is available, without a prescription, despite being produced from the hemp plant. Industrial hemp has .3% or less THC on a dry weight basis, and is purportedly not subject to the Controlled Substances Act. 21 U.S.C. 801 *et seq.* The dismissal of Violations #2 through #5 eliminates the need to assess the legality of the anandahemp product.

The Report charges Defendant with three violations stemming from this conduct. As Violations #1 and #2, the Report charges Defendant with violating Standard Condition #7, which requires him to "not purchase, possess, use, distribute, or administer any controlled substance . . . , except as prescribed by a physician." Violation #1 is based on the count of Defendant's hydrocodone and lorazepam pills conducted on May 14, 2018. Violation #2 is based on Defendant's urine specimen that tested positive for marijuana. Both are Grade C violations. As Violation #3, the Report charges Defendant with a violation of the supervised release condition that prohibits him from committing another federal, state, or local crime. This Violation is based on Defendant's criminal history and the possession of marijuana, which is a violation of 21 U.S.C. § 844(a), Possession of a Controlled Substance, and a Class E felony. This is a Grade B violation.

On June 15, 2018, the USPO issued a Supervised Release Violation Report Addendum ("the Addendum") alleging that Defendant submitted a urine sample on June 5, 2018, that tested positive for marijuana via an instant test and laboratory confirmation testing. Defendant indicated that he had continued to use anandahemp. The Addendum charges two violations of Defendant's supervised release stemming from this conduct. First, as Violation #4, the Addendum charges Defendant with violating Standard Condition #7, which requires him to "not purchase, possess, use, distribute, or administer any controlled substance . . . , except as prescribed by a physician." This is a Grade C violation. Second, as Violation #5, the Addendum charges Defendant with violating the supervised release condition that prohibits him from committing another federal, state, or local crime. This Violation is based on Defendant's criminal history and the possession of marijuana, which is a violation of 21 U.S.C. § 844(a), Possession of a Controlled Substance, and a Class E felony. This is a Grade B violation.

## II.

On June 20, 2018, the Court conducted an initial appearance on the violations charged in the Report and the Addendum pursuant to Rule 32.1 of the Federal Rules of Criminal Procedure. D.E. 7. Defendant knowingly, voluntarily, and intelligently waived his right to a preliminary hearing. *Id*. At the initial appearance, the United States did not move for detention and Defendant was released on his current conditions of supervision. *Id*.

At the final hearing on July 11, 2018, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 11. Defendant competently entered a knowing, voluntary, and intelligent stipulation to Violation #1. *Id*. For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for the violation as described in the Report and the United States thus established Violation #1 under the standard of § 3583(e). The United States moved to dismiss violations #2-#5.

## III.

The Court has evaluated the entire record, the Report, the Addendum, all accompanying documents, and the sentencing materials from the underlying Judgment. Additionally, the Court has considered all of the 18 U.S.C. § 3553 factors imported into the § 3583(e) analysis. Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant was originally convicted of conspiracy to distribute 500 grams or more of methamphetamine, a Class A felony. *See* 18 U.S.C. § 3559(a)(1); 21 U.S.C. § 841(b)(1)(A)(viii). Defendant's conviction carries a sixty-month maximum period of incarceration upon revocation pursuant to § 3583(e)(3). Under § 3583(h) and § 841(b)(1)(A)(viii), there is no maximum term of supervised release that may be re-imposed.

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, U.S.S.G. § 7B1.4, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (citation omitted). Under Section 7B1.1, Defendant's admitted conduct in Violation #1 would qualify as a Grade C violation. Given Defendant's criminal history category of I (the category at the time of the conviction) and a Grade C violation, Defendant's range, under the Revocation Table of Chapter Seven, is three to nine months. U.S.S.G. § 7B1.4(a).

The parties jointly recommended that the Court not revoke Defendant's supervised release and permit him to remain on his current conditions. In support of this recommendation, the United States noted that, while Defendant has two previous similar violations concerning noncompliance with his opiate prescriptions, he reached out to the USPO and asked for help when he recognized that he was becoming dependent on his prescription medication. Instead of attempting to hide his behavior, the government emphasized, Defendant has been forthcoming and has actively sought treatment on his own. The government argued that society's best interest would be served by Defendant using available alternative medicines, such as hemp oil, rather than illegally using opiates. The United States added that the USPO has the discretion to determine what type of drug testing will best monitor the use of hemp oil instead of marijuana. With the exception of his conduct in Violation #1, the government noted that Defendant has been compliant while on supervised release.

Defense counsel agreed with the government and noted that Defendant took improper doses of his prescription medications because he became confused during the tapering process. Counsel explained that Defendant's previous prescription allowed him to take four hydrocodone/acetaminophen pills per day, but the tapered prescription prescribed three pills per day. Defendant mistakenly took four pills per day. However, counsel acknowledged that it is Defendant's responsibility to monitor his medications and to ensure that he remains compliant with their prescribed dosages.

### IV.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range. The Court agrees with the argument made by the government and defense counsel that Defendant's supervised release should not be revoked.

This case presents a good example of the difficulties, and potential addiction, controlled substances can cause. Defendant is commended for being honest and seeking help from his probation officer when he felt like he was becoming dependent upon his prescription medications. He voluntarily attended a detox program and an inpatient substance abuse treatment program. Defendant seems resolute in his desire to face his addiction and rational in his understanding of its consequences. The USPO provided a very positive report of Defendant's behavior during his supervision, including his continued participation in outpatient substance abuse treatment, his decision to find part-time employment despite receiving disability payments, and his honest nature.

While the Court does not believe that Defendant's conduct warrants revocation, his violation conduct is very serious and constitutes a breach of the Court's trust. This is

Defendant's third violation for not following the dosage limitations of his prescriptions. Defendant must understand that the Court is placing trust in him to follow the conditions of his supervised release and that he must be more careful when taking medications. Defendant should seek advice from his probation officer if he is confused about his dosage instructions. Future violations will likely result in a harsher consequence.

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's conviction does not carry a maximum term of supervised release. 18 U.S.C. § 3583(h); 21 U.S.C. § 841(b)(1)(A)(viii). The parties jointly recommended that Defendant be allowed to continue on his current term of supervised release, which is scheduled to expire on January 28, 2021, under the current conditions, and the Court believes that this is appropriate.

Based upon the foregoing, the Court **RECOMMENDS**:

1. That Defendant be found guilty of Violation #1;

2. Dismissal of Violations #2-#5;

3. That supervised release continue under the existing conditions and period of time required by Docket Entry 1-3.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on District Judge Van Tatenhove's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As

defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended disposition, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 13th day of July, 2018.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge